UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-80 |
| v. | * | SECTION: "I" |
| RODERICK HICKMAN<br>LOIS RUSSELL<br>JAMES WILLIAMS<br>   a/k/a "Curtis Williams"<br>TANYA GIVENS<br>JOHN DIGGS<br>HENRY RANDLE<br>RYAN WHEATEN<br>DAKOTA DIGGS<br>BERNELL GALE<br>MARVEL FRANCOIS<br>TROY SMITH | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>* | |

\* \* \*

## FACTUAL BASIS AS TO RODERICK HICKMAN

Should this matter have gone to trial, the government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the government in Count 1 of the Indictment now pending against the defendant, **RODERICK HICKMAN**, charging him with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit mail fraud. The Defendant, along with his co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit mail fraud in connection with staged accidents, including one that occurred on March 27, 2017.

Before on or about 2015, **HICKMAN** and Damien Labeaud ("Labeaud") worked as "runners" for Attorney C, in that **HICKMAN** and Labeaud would refer persons involved in legitimate motor vehicle accidents to Attorney C in exchange for money. It was agreed that Attorney C would pay **HICKMAN** and Labeaud $1,000.00 per passenger for accidents with tractor-trailers and

1

$500.00 per passenger for accidents that did not involve tractor-trailers. While working together as runners, Labeaud and **HICKMAN**, brought at least twenty (20) accidents to Attorney C.

In or around 2015, **HICKMAN** and Labeaud also began working together to stage automobile accidents. When staging accidents, **HICKMAN** and Labeaud both served as so-called "slammers" and "spotters." The "slammer" was the driver of the vehicle in the staged accident, and the "spotter" was the person driving the getaway vehicle. As a slammer, **HICKMAN** would intentionally cause a collision with a tractor-trailer and then exit the vehicle immediately and flee the scene. As a spotter, **HICKMAN** would follow Labeaud in a separate vehicle and then pick up Labeaud from the scene immediately after he caused the accident to evade detection. **HICKMAN** and Labeaud used several different spotter vehicles throughout the course of the conspiracy.

**HICKMAN** and Labeaud brought persons involved in illegally staged accidents to attorneys, including Attorney C, in exchange for money. Attorney C knew that Labeaud and **HICKMAN** were staging accidents. **HICKMAN**, Labeaud, and Attorney C would sometimes discuss the staging of accidents before they happened. Labeaud and Attorney C sometimes communicated through coded language, including fishing terms, to refer to staged accidents. **HICKMAN** and Labeaud agreed to share the proceeds they obtained for accidents that they staged together. Attorney C would pay **HICKMAN** and Labeaud via cash and check for staged and legitimate accidents. For example, **HICKMAN** received money from Attorney C, including, but not limited to checks in the approximate amounts of $3,000.00 on or about February 26, 2016; $2,500.00 on or about April 1, 2016; $1,000.00 on or about June 2, 2016; and $1,000.00 on or about September 1, 2016. Attorney C would sometimes loan **HICKMAN** and Labeaud money and then subtract the loan amount when calculating how much was owed to **HICKMAN** and Labeaud for a staged accident. Additionally, Attorney C represented **HICKMAN** and Labeaud in accidents that they



2

were each involved, and concealed subsequent payments to them for staging accidents as advances on their settlement and/or loans.

On a date unknown but not later than 2016, Labeaud also began bringing persons involved in illegally staged accidents to Attorney A in exchange for money. Attorney A would pay Labeaud $1,000.00 per passenger for accidents with tractor-trailers, and $500.00 per passenger for accidents that did not involve tractor-trailers. Attorney A knew that Labeaud was staging accidents with **HICKMAN** and another spotter, Mario Solomon. Attorney A paid Labeaud for illegally staged tractor-trailer accidents, and then Labeaud paid individuals including **HICKMAN** and Solomon in cash for the accidents that they helped to stage.

According to **HICKMAN**, from approximately 2015 to approximately 2017, he staged at least one hundred (100) accidents for attorneys, including Attorney A and Attorney C. One of the accidents that the Defendant staged is described below:

### *March 27, 2017 Staged Accident*

On or about March 25, 2017, Co-Conspirator B contacted Lois Russell ("Russell"), James Williams a/k/a Curtis Williams ("Williams"), Tanya Givens ("Givens"), and John Diggs ("J. Diggs") to see if they were interested in staging an automobile accident, and Russell, Williams, Givens, and J. Diggs agreed. On or about March 26, 2017, Russell, Williams, Givens, and J. Diggs paid Co-Conspirator B the sum of $250.00 each for arranging the staged automobile accident. On or about March 27, 2017, Russell, Williams, Givens, and J. Diggs drove from Gibson, Louisiana in a 2007 Mercury Mountaineer ("Mountaineer") owned by Russell to a fast food parking lot in New Orleans, Louisiana for the purpose of staging an automobile accident with a tractor-trailer in order to obtain money through fraud.

3



Phone records show that, at approximately 10:37 A.M., **HICKMAN** texted Labeaud, "Outside." At approximately 11:59 A.M., Labeaud received a text, "Bout to pull up."

In the fast food parking lot, Russell, Williams, Givens, and J. Diggs met with **HICKMAN** and Labeaud, and they discussed how they were going to intentionally stage an accident involving a tractor-trailer. Labeaud and **HICKMAN** were in Labeaud's car. Russell agreed to allow **HICKMAN** to drive the Mountaineer. **HICKMAN** drove Russell, Williams, Givens, and J. Diggs in the Mountaineer to locate another vehicle to collide with in the area of Chef Menteur and Downman Road in the New Orleans East area. At approximately 1:05 P.M. that day, **HICKMAN**, while driving the Mountaineer on Chef Menteur Highway, intentionally collided with a 2017 Freightliner tractor-trailer owned by HMNG Trucking and operated by Truck Driver A while it was traveling past the Downman Road exit. **HICKMAN** exited Russell's Mountaineer after the collision and told Russell to get behind the wheel of the Mountaineer to make it appear that Russell was driving the vehicle at the time of the staged accident. **HICKMAN** exited the Mountaineer after the collision and left the accident scene in Labeaud's car.

After **HICKMAN** exited the Mountaineer, Russell got behind the wheel of the Mountaineer. Givens contacted the New Orleans Police Department ("NOPD") to report that the occupants in Russell's car had been in an automobile accident. At approximately 1:55 P.M., NOPD responded to the scene of the staged accident and, shortly thereafter, Russell falsely reported to the NOPD that she had been the driver of the Mountaineer and that the HMNG tractor-trailer struck her vehicle.

Labeaud instructed Russell and J. Diggs to meet Attorney A at his office after making the police report, in order to arrange representation. Attorneys A and B referred Russell and J. Diggs

to doctors and healthcare providers for medical treatment. On or about November 2, 2017, Attorneys A and B filed a filed a personal injury lawsuit on behalf of J. Diggs, and subsequently added Russell, seeking to obtain monetary damages from Security, HMNG Trucking, and Progressive Security Insurance Company ("Progressive") in connection with the March 27, 2017 staged accident ("J. Diggs/Russell Lawsuit"). The allegations in the J. Diggs/Russell Lawsuit were false in that they did not contain information about how **HICKMAN** and Labeaud intentionally caused the March 27, 2017 accident with the 2017 Freightliner tractor-trailer. Furthermore, the J. Diggs/Russell Lawsuit falsely alleged that Russell had been the driver of the Mountaineer during the accident and omitted material information about how the passengers had agreed to stage the accident with **HICKMAN** and Labeaud.

Co-Conspirator B and Labeaud advised Givens and Williams to use the law firm of Attorneys C, D, and E for their legal representation. Attorney D referred Givens and Williams to doctors and healthcare providers for medical treatment. On or about February 9, 2018, Attorney D filed a personal injury lawsuit on behalf of Williams and Givens, seeking to obtain monetary damages from Security, HMNG Trucking, and Progressive in connection with the March 27, 2017 staged accident. The allegations in the Williams/Givens Lawsuit were false in that they did not contain information about how **HICKMAN** and Labeaud intentionally caused the March 27, 2017 accident with the 2017 Freightliner tractor-trailer. Furthermore, the Williams/Givens Lawsuit falsely alleged that Russell had been the driver of the Mountaineer during the accident and omitted material information about how the passengers had agreed to stage the accident with **HICKMAN** and Labeaud. On or about March 23, 2018, counsel for Progressive filed a Motion to Transfer and Consolidate the Williams/Givens Lawsuit and the J. Diggs/Russell Lawsuit.



Williams, Givens, Russell, and J. Diggs each provided false testimony in subsequent depositions taken in conjunction with the consolidated lawsuits filed by Attorneys A and D.

On or about April 10, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via the United States Postal Service ("USPS") to Attorneys A and B, located on Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $140,000.00 for J. Diggs. On or about April 18, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Attorneys A and B, located on Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $17,500.00 for Russell. On or about April 18, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Attorney D, located on Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $115,000.00 for Williams.

In May 2019, Attorney D advised Givens that the law firm of Attorneys C, D, and E was withdrawing from the Williams/Givens Lawsuit because the accident had been flagged as fraudulent. No settlement was paid on behalf of Givens.

In sum, the government's evidence would prove the Defendant, **RODERICK HICKMAN**, conspired to commit mail fraud by causing mailings in connection with the filing of the Williams/Givens Lawsuit and the J. Diggs/Russell Lawsuit seeking monetary damages that was premised on falsehoods in connection with the March 27, 2017 staged automobile accident. The government would prove that **HICKMAN** received payment for his role in staging accidents for passengers who would subsequently become clients of Attorney A, Attorney C, and other attorneys. The government's evidence would also prove that the Defendant knew that his co-conspirators would seek to obtain monetary damages from the owners and insurers of those tractor-trailers.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **HICKMAN**, and/or the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **HICKMAN**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and admissible tangible exhibits in the custody of the FBI.

READ AND APPROVED:

_____
RODERICK HICKMAN
Defendant

_____
CLARENCE ROBY
Counsel for Defendant

_____
BRIAN M. KLEBBA
MARIA M. CARBONI
Assistant United States Attorneys